at all appellees, Umholtz at all appellants. And I know there's going to be some table hopping here, but we're going to take the arguments deconsolidated, so to speak, for the one separate issue. But why don't you proceed. Thank you. Thank you. Good morning, your honors, and may it please the court. My name is Paul Linton, appearing on behalf of the petitioners, Stuart Umholtz, the state's attorney of Tazewell County, and Edward Gators, the state's attorney of Effingham County, with me today are my co-counsel Thomas Brecka and Peter Breen. Your honor, this morning the interveners, the petitioners, asked this court to reverse the judgment of the appellate court, 1st District, affirming the order of the Circuit Court of Cook County, denying them leave to intervene in the underlying challenge to the Illinois Abortion Act, Notice of Abortion Act of 1995. Petitioners sought to intervene both by permission and as of right. We stand in our brief with respect to seeking to intervene by permission. In order to be justified in intervening as of right, a petitioner must establish three requirements. First, his application must be timely. Second, he must be able to allege that the representation of his interest by existing parties to the case is or may be inadequate. And third, he must be able to show that he will be or may be bound by a judgment in the case. Now the parties to this case have focused their attention on the second requirement, whether there is an interest that the petitioners have, and if so, whether that's being adequately represented by the defendants in this case. The petitioners asserted two interests. First, under Section 40B of the Parental Notice of Abortion Act of 1995, they had the authority to institute criminal prosecution against anyone who forges a waiver of notice for a minor seeking an abortion who doesn't have authority to waive notice, as a parent or step-parent or guardian would have. This is a power, this criminal enforcement power, is obviously not one shared with the general public or any of the defendants, none of whom have criminal prosecutorial authority. The second interest that they have alleged is that they have power under Section 40A of the Act, as well as Section 23A4 of the Medical Practice Act, to refer physicians who willfully violate the act to the Illinois State Medical Disciplinary Board for possible discipline. Now the parties, the defendants and the plaintiffs, have both said, well, this is an authority that the general public also has. The general public may refer physicians who violate the law to the board. There are some significant distinctions here, though. The state's attorney's referral has to be verified, which suggests that the state's attorney has to do some type of at least preliminary investigation to determine whether or not there is a basis for referring the doctor to the disciplinary board for possible discipline. Obviously, this is not a power or authority or a duty or obligation that any member of the general public has. As a practical matter, of course, the plaintiffs were in no position to sue the general public. You can't sue the general public, but you can sue a class of state's attorneys for their authority under this provision of the Medical Practice Act and the corresponding provision of the Parental Notice of Abortion Act. And in fact, that's precisely what the plaintiffs or their privies, represented by the same counsel, did in the federal constitutional challenge to this same act in 1995. They named Jack O'Malley, the state's attorney of Cook County, in his individual capacity as state's attorney and as representative of a class of all 102 state's attorneys, as a party defendant, not because of any criminal enforcement authority under the forgery provision, but solely and exclusively because of his power to refer physicians to the disciplinary board. Now, we suggest if the state's attorneys were appropriate parties in the federal litigation challenging the same act, they have not become, by some strange process, officious intermediaries, in this case, where they did not name a class of state's attorneys. Now, let me turn to adequacy of representation. In our brief, we identified multiple respects with which we feel that the defendants have not adequately represented their interests. We're going to focus on two of those this morning. First, the question is, does the Illinois Constitution confer a right to abortion? Now, throughout this litigation, despite some back and forth and unclarity in some of their presentations, the defendants have acknowledged that the state constitution confers the right to abortion, although not one that's any broader than the federal right. Now, whether there is such a right, of course, is key to the plaintiff's case. And our position is, this position that the defendants have taken, that there is such a right, albeit no broader than the federal right, is a concession that was entirely unwarranted and should not have been made. And we say this for two reasons. First of all, the only possible sources of such a right are either our due process clause or the privacy language of our search and seizure provision. As our motion to dismiss, our proposed motion to dismiss, that we filed below, under 2-615, set out in detail, there is no basis for that conclusion. When you look at the debates of the Constitutional Convention of 1969-1970, it is clear beyond question that the legislature took a neutral position on the question of abortion. The convention took out pro-life language that had been submitted by the Bill of Rights, and they refused to consider proposals by pro-choice members of the convention to put any type of pro-choice language in it. The Bill of Rights Committee would not consider it, and the convention wouldn't either. Several people who objected to the pro-life language admitted on the floor, well, we would have liked, we would have preferred that the convention address this issue and recognize that there's some right to abortion here, but that was not pursued because there was no support for it. So it's clear, again, that with respect to the due process provision, the drafters of the Illinois Constitutional Convention simply had no intent to constitutionalize the issue one way or the other. They left it up to the General Assembly. The other provision is the privacy language of Article I, Section 6. Now, there are multiple reasons why there should have been no concession that this provision arguably supports a right to abortion either. First of all, unlike the privacy provisions in some state constitutions which are freestanding, this is part and parcel of the search and seizure provision, and it has been so construed by this court. The second reason is that there isn't a single decision by this court interpreting the privacy language to extend to anything involving conduct. It's all limited to information gathering, evidence gathering in criminal cases, or information, confidentiality of information. And finally, there was that exchange between Father Lawler, a delegate to the convention, and Elmer Goertz, the chairman of the Bill of Rights Committee. Father Lawler said, does this language, this privacy language, have anything to do with the question of abortion? And the chairman said, absolutely not. Now, the second respect with which we believe the defendants have not adequately represented the intervener's interests relates to the interpretation of this court's decision in the Family Life League case. The defendants have taken the position, although again it's somewhat inconsistent when you go from one pleading to another, one brief to another, that that decision of this court somehow recognized a right to abortion. That is not correct either. The issue in the Family Life League case was limited to a federal constitutional issue and a state statutory issue regarding the privacy of medical records. It did not involve conduct. There's nothing in the opinion that addresses that. And as the briefs in that case indicate, no one argued, not the state, not the ACLU as an amicus curiae, no one argued that the state constitution protects a right to abortion as such. The argument was that the privacy language protects privacy of information, which was the issue in the Family Life League case. So we suggest that that concession was unnecessary. And further, we think it would be odd for this court, where that issue was not raised, it was not argued, there was no discussion of the constitutional convention debates, there was no citation of relevant authority, to suggest that this language that the pardons rely upon somehow established a right to abortion simply is implausible. So we suggest, Your Honor, for those reasons and the other reasons that we have set forth in our briefs, that this court should revert the judgment of the appellate court. Thank you. Thank you, Mr. Linton. Good morning, and may it please the court, Michael Skodro from the Office of the Illinois Attorney General, here on behalf of the defendants' appellees in case number 112673. We're dividing time evenly with co-appellees, so I'll get right to the point on intervention. The circuit court did not abuse its discretion in denying the intervener's request to intervene in this case, and the appellate court properly affirmed the exercise of that discretion by the circuit court. I'll turn very quickly to the two factors that are in play before this court on the intervention as of right. As counsel indicated, they involve sufficiency of the interest and the adequacy of the existing representation on behalf of the defendants in the case. First, as to sufficiency of interest, the interveners clearly fail here. They do identify two provisions in Section 40, and they claim that these give them an interest that goes beyond what the general public enjoys. And as this court has held as recently as the Burkett decision in 2002, the interest for purposes of intervention as of right does need to go beyond what the general public enjoys. They cite first their ability to prosecute forgers under Section 40B of the Notice Act. But note what's being prohibited here. Under Section B of the Notice Act, they can prosecute folks who have falsified or forged waiver forms, notice of waiver forms. Those forms are required elsewhere in the Act as one of the exceptions under Section 20. This is not a circumstance in which if plaintiffs prevail, the prosecutors will lack an arrow in their quiver, an ability to go out and prosecute antisocial conduct. Indeed, the conduct itself simply won't exist. If the Act were to be struck down wholesale as plaintiffs seek, there would be no waiver notices. There would be no forged waiver notices. So one is hard-pressed to see where the prosecutor's interest comes in in defending the statute, which, by the way, is not being challenged. Section 40, of course, is not the subject itself of the challenge or other provisions. With regard to 40A, the power to refer, the power to refer exists in all Illinoisans. The Medical Practice Act makes clear anyone can refer to the medical board any physician who has willfully violated the notice law. Now, to be sure, there is language in the Medical Practice Act itself that allows, does not insist upon, but allows state's attorneys to do so through verified complaint. But, again, it's difficult to see how that difference alone is grounds to give them the substantial interest beyond what all citizens enjoy to intervene as of right. Even if the court disagrees as to interest, plaintiffs, I'm sorry, interveners have not shown inadequacy of representation here. And this is clear for several reasons. The court typically considers four factors in looking at adequacy of representation. Clearly, the first is not satisfied here. That is, do we not share the same interests? Both the state defendants who are already in the case and the interveners are both defending the constitutionality of the law against a facial challenge. So, clearly, they have the same interests. Factual and legal positions being the same, Interveners have pointed out a series of instances in which they think the Attorney General's Office, on behalf of the defendants, ought to have made different decisions. But the case law is clear. Strategic differences of this nature do not rise to the level that require intervention as of right. There are disputes, clearly, over some areas, though, when we get to the merits. I think I can explain the position the defendants have taken on the merits in this case, including their position on the due process clause and the privacy clause. And, truly, they do not rise above the level of mere strategic differences. Finally, expertise and vigor, the last two factors the courts have considered in looking at adequacy of representation, and I think there can be no dispute that neither of those are satisfied here. There can be no claim that the Attorney General's Office, on behalf of the defendants, has the resources and wherewithal to defend the statute. They have done so for a series of federal cases or levels of federal review, and now in the state courts to the Illinois Supreme Court. Finally, I'll just touch briefly on permissive intervention. There, too, even though the intervention is permissive, as this court made clear as early as 1980 in its Maeder decision, even as to permissive intervention, there has to be a showing that the would-be intervener has interests that go beyond those of the general public, not just generalized and diffuse interests. And for the reasons I mentioned, the interveners have failed to satisfy that requirement here. Unless the court has any questions, we would urge the court to affirm the judgment of the appellate court on the intervention question. Thank you, Mr. Scodro. Good morning. May it please the court, my name is Lori Chayden. I'm here on behalf of the Plaintiff's Appellees. Your Honors, the Hope Clinic for Women and Allison Howitt. Thank you. The proposed interveners have failed to demonstrate that the circuit court abused its discretion in denying intervention here. They have not presented an enforceable, recognizable right that distinguishes their interests from those of existing parties or an interest greater than those of the general public, as Mr. Scodro has just laid out, nor have they demonstrated inadequate representation in the face of the defendant's vigorous defense of the act here. They've also failed to demonstrate that they're necessary parties. The mere fact that they were parties to a prior piece of litigation and they were proper parties does not necessarily mean that they are necessary parties here, and they failed to meet the standards for necessary parties. The circuit court was well within its discretion to deny intervention and instead permit the proposed interveners to participate fully as amici and make their voices heard in that court. Unless the court has more questions for me, I would have nothing further to add, and I'll stand on our briefs and on the comments that Mr. Scodro made. Ms. Chayden, let me ask you this, and I'll also ask this to Mr. Linton. If his position, the interveners, those applying for intervention, prevail, what's next? Does that mean the case goes back for additional hearings? Well, Your Honor, we would ask that the court remand the case to the circuit court for presentation of a factual record. I would assume that if the court permitted intervention, that the court would determine in what capacity the proposed interveners would be permitted to participate, except that we believe very strongly that they haven't demonstrated a right to intervene here. They haven't demonstrated an interest that distinguishes their situation from that of the defendants. They both seek to uphold the statute. There's been vigorous defense here. There have been numerous amicus briefs submitted as well, and they haven't differentiated their situation from that of the general public. And so it would be, we think, inappropriate to permit them to intervene, and so therefore it's difficult to answer the question of what role they would play. And just to be clear for the record, I'm not assuming they're prevailing, but that's why I said if they were to prevail, where do we go next? I understand. I know you oppose it. Thank you. Thank you, Your Honor. Any other questions? Mr. Chief Justice, to respond to your last question first, as we said at the conclusion of our brief in a footnote, if this court decides to reverse the appellate court on the underlying litigation, the merits, and uphold the Parental Notice of Abortion Act of 1995, our appeal becomes moot. We recognize that because at that point there's nothing left to discuss. However, we have suggested that the court may wish to consider still reaching the issue, not for purposes of a remand or vacating anything, but for purposes of providing guidance in future cases under the public interest exception to the mootness rule. The parties have said, Mr. Scodro and Ms. Chaitin have said, well, we don't have any interest apart from the general public. Well, obviously, with respect to the criminal provisions, we do have an interest. The general public cannot bring criminal prosecutions. Our clients, the state's attorneys, all state's attorneys in the state may do so. Now, Mr. Scodro suggests, well, this is kind of ancillary to what this case is really about, and the whole thing goes out if the law goes out. That's true. That's precisely why we are in this case with respect to the criminal enforcement provisions, that our authority, our ability to prosecute for forgery will be nullified by an inadequate defense of this law that leads to its invalidation. So we have nothing in common with the general public on that point. And let me add, this is a facial challenge to this law. It's true that the plaintiffs did not single out this authority as a basis for challenging the act, but their relief, if you look at their complaint, they asked for a declaration that this act is void and of no effect. That obviously throws out all provisions of it, criminal as well as the regulatory provisions that apply to physicians. Now, turning to the referral authority, the state's attorneys have an obligation, obviously, under the law to enforce it, and they have the authority to make referrals. Those referrals have to be verified. We would simply reiterate the fact that if they have to be verified, that presumes that there's some type of investigation going on before they submit something to the disciplinary board. They just can't send in a letter thinking, well, we think Dr. So-and-so didn't properly adhere to the law. We think he willfully violated it. You can't make that statement under oath unless you have some basis for it. Now, the public, obviously, is under no obligation to be investigating this, but we suggest that the state's attorneys do have that authority, and that distinguishes them from the public. And, again, if their authority was so irrelevant, why were they named as a class of defendants in the federal litigation? At no point in this litigation have the plaintiffs ever answered that question. The most they are willing to say is, oh, that was an oversight in drafting. We forgot to take out the name of the state's attorney when we filed this amended complaint in 1995, because the 1983 action, challenging the 83 law, which did have criminal penalties for physicians, that was struck down, and they say, well, this was just an oversight. The problem with that explanation is there was a different state's attorney in Cook County in 1995. It was not Richard Daly. It was Jack O'Malley. It was deliberate. They named him as an individual in a representative capacity precisely because of his referral authority. And I might add that in none of the cases that we cited in our opening brief, in our first footnote, is there any evidence that the Attorney General has ever objected to a class of state's attorneys being named as party defendants in any federal litigation challenging any of Illinois' abortion regulations. Now, Mr. Skogel said, well, we have the same objectives here. And Ms. Tatum said the same thing with respect to the defendants and the state's attorney petitioners. We have the same objective in the sense that, yes, we want the law upheld. But as some of the cases we cited in our brief, Lurie and Duncan, indicated, the fact that we have a common objective, a common goal, does not mean that that goal is being adequately represented by the defendants. And Mr. Skogel tries to dismiss this as just differences over strategy. I realize this could be a matter of degree, but we think it goes beyond a matter of strategy when you conceded a critical threshold point that is key to the plaintiff's prevailing in this case. And that is whether the Illinois Constitution confers a right to abortion. There was no basis for making that concession when you look at the historical record and the decisions of this court. And in their answer brief in this court, the defendants say, well, as far as the Family Life League decision is concerned, this is just a quibble over interpretation of one case. Well, that case is the linchpin of the plaintiff's challenge to the law. And to concede that that case decided something when it never addressed the issue, in our judgment, shows inadequacy of representation. So for all the foregoing reasons, we ask that the court reverse. Thank you. Thank you, Mr. Linden. May it please the court, Michael Skojo in the consolidated case number 112704, this time on behalf of defendants at the LOMS. Your Honor, let me begin by saying that there are a number of independent legal barriers to plaintiffs proceeding with their complaint in this case. And at the very threshold of that list, the very first one is that they must, at the beginning of the case, show that the Illinois Constitution provides greater abortion rights than its federal counterpart. This is an essential first step. If they can't clear that hurdle, the rest really doesn't matter. And here's why. We know that the Notice Act is constitutional federally. We know that because this very law was upheld in 2009 in the Zabaris case, because 44 states nationwide, as the U.S. Supreme Court counted in 2006, have notice or, indeed, more burdensome consent laws. And the U.S. Supreme Court has upheld those laws consistently in a string of cases beginning in 1981. Indeed, as recent as 2006, in the Supreme Court's decision in Ayotte, the court unanimously includes this language in its opinion. It says, we have unquestionably, there is unquestionably have a right, states, unquestionably have a right to acquire parental involvement in the juvenile abortion decision. That was the unanimous language from the U.S. Supreme Court in 2006. So unless plaintiffs could convince the court that the United States Supreme Court, if asked today, would reverse 30 years of jurisprudence, would strike down those 44 laws in those states, and would undo its language in Ayotte, unless they can make that showing, then at the very outset, the court must first convince itself that the Illinois Constitution provides greater rights than its federal counterpart. So with that as our beginning, I'll turn first to the Privacy Clause. Here is where the parties devote a lot of their ink in the briefs, and understandably so, because the word privacy doesn't appear in the federal constitution. But for three independent reasons, the Privacy Clause does not, or the privacy language in Article I, Section 6, does not provide a freestanding right to an abortion under Illinois law. And indeed, as I'll explain, even if it did, that right would be in lockstep with its federal counterpart, and for reasons I just mentioned, that in itself would be fatal to the complaint. Why doesn't the word privacy include a right to an abortion? Well, as we point out in our briefs, this court has said time and again, that when looking at what privacy means, we look at at least two things. One are the convention debates, and the other is the historical context in Illinois at the time. In this case, both of those point in exactly the same direction. And that is, that the privacy right doesn't speak either way to the abortion issue. We know this first and foremost, because as we point out on pages 18 to 20 of our opening brief, the convention history could not have been clearer. The committee chairman for the Bill of Rights Committee, Elmer Girtz, was asked directly whether or not the use of the word privacy would bear at all on the abortion debate. And he responded, no, it has nothing to do with abortion. As I'll mention in a moment, there was additional debate surrounding due process, but as for privacy, that was the end of the discussion. Not a single delegate contradicted, questioned, or followed up that pronouncement by the chair of the Civil Rights Committee. What we do know from those debates is what they did have in mind in including the word privacy. They had in mind, and I'm quoting now some of the phrases that were used by delegates, technological developments, sophisticated devices, essentially technological improvements going forward that would permit the government to surveil its citizens in ways not yet contemplated by the delegates. And they were understandably concerned that the existing language, if it just tracked the Fourth Amendment of the U.S. Constitution, may not be nimble enough to adapt itself to those future advances. Consistent with that, with the exception of Family Life League, which I'm very happy to address in a moment, this court has made clear time and time again, including its decision in 1992 called 1991 Will County Grand Jury, the court has made clear that privacy has come to mean two things in Illinois. One, a right against the invasion of informational privacy, and the other, the right against taking things for investigatory purposes from the person, fingernails, hair, blood, etc. Those are the two categories, and that's perfectly consistent with the convention history. Now the other factor this court has said we have to consider in deciding what privacy means is the historical context surrounding the 1970 ratification of the Constitution. Well, that too points in exactly the same direction. For many, many years prior to the convention, and for three years beyond it, until 1973, Illinois criminally prohibited abortion. It was a crime in Illinois until 1973. And in 1973, when this court struck down Illinois' abortion law in a case called Fry, this court did so relying entirely on the then very recently decided U.S. Supreme Court decision in Roe v. Wade. There is nothing in the Fry decision to suggest that the court perceived Illinois' law as a grounds for its decision in Fry. So there too you have historical context, the delegates operating in a circumstance in which it is criminally unlawful to perform an abortion, and coupled with the statements that were made on the floor, paint a compelling picture. Now, why is Family Life League not an obstacle to this reading? Well, there are three points I'd like to make about Family Life League. First, to be sure, there is a sentence in Family Life League. After a citation to Roe, there is a sentence that says that Illinois recognizes this privacy right. And it cites two provisions of the Illinois Constitution, Article I, Section 6, and Article I, Section 12. So Section 6 is the privacy provision. The reason we know that the court in all likelihood simply cited the wrong provision there, and to be sure it was cited wrong in the 1986 briefs on behalf of the Attorney General's office as well. The reason is there's no discussion. It's a single sentence. There's no discussion to suggest the court is undertaking the sort of developed analysis one would know they would undertake if instead with that single sentence the court was announcing a new right to privacy located not in due process where the federal courts had already recognized it, but rather in the use of the word privacy in the search and seizure provision. Just before the word privacy is the phrase search and seizure, and just after it is a prohibition on eavesdropping. It seems unlikely that the court would have reached that conclusion, monumental as it is, without a whiff of discussion, including a discussion of the very history that I've just gone over, history that the court has said time and again that one must consider in deciding what the word privacy means. Beyond this, we know that even if, and let me add to that, here's why correcting that now and saying that the proper citation should have been to Article 1, Section 2, due process, is not going to require the court to overturn anything. There are two reasons for that. The first is that paragraph, as we explain in our brief, is pure dictum. The issue of whether or not a woman's right to an abortion was in play at all in that case is because there was a claim that by disclosing the information that was demanded by plaintiffs in that case, it would dissuade physicians from performing abortions, and that would have a collateral effect on women wanting to have that procedure. That's why the paragraph is there. But soon after that paragraph, the court makes very clear that it discounts entirely the claim that such a collateral effect would exist. So at the end of the day, there's no reason in the opinion to have addressed and gone through, ultimately, where, if anywhere, there is an abortion right under the federal or the Illinois Constitution. And here's my final point on Family Life League. At the end of the day, it really doesn't matter to this case, and that's why the idea that the Attorney General's Office, the defendants, have conceded something monumental is misplaced. It doesn't matter. If Family Life League did everything that plaintiffs contend it does, if it announced a right to an abortion under the Illinois Constitution, and if it located that right in the word privacy, it did all of that, it still doesn't matter because everything around that citation makes perfectly clear that whatever Illinois right it's describing is in perfect lockstep with federal substantive due process. Now we know that for two reasons. We know it because the court cites Roe, Akron Center, another federal substantive due process case, and two state cases, both of which rely entirely on federal substantive due process case law. That's reason number one. Reason number two, we know it is because the court doesn't undertake any independent state constitutional law analysis. If the court had just announced that there is a privacy right out of lockstep with federal law located in the privacy clause that bears on the abortion question, the court would have needed to go further and say, and you know, as a matter of Illinois law either, although it may be broader, it doesn't cover the circumstance either. Something needed to be said, but instead the court treats the two as entirely identical. So because, as I've explained, they have to at the threshold show that Illinois is out of lockstep is more protective than federal law, it doesn't matter at the end of the day whether Family Life League erroneously cited Section 2 or Section 6. Moving on to sort of a third point regarding the privacy clause. If at the end of the day the court rejects everything I've just said and concludes that yes, there is a privacy, I'm sorry, an abortion right located in the word privacy in Article 1, Section 6, it is not in lockstep, notwithstanding Family Life League. Indeed, it's broader than the federal right. Plaintiff's complaint still fails as a matter of law. Article 1, Section 6 makes clear what the standard is when you're dealing with searches and seizures or other violations of that provision. It's reasonableness. And this law, on a facial challenge, whereas we've said this court has said time and again you need to show that it's unlawful in every application, is absolutely reasonable in a facial perspective. And we know that for many reasons. One reason is the Seventh Circuit, in evaluating this very law in Zabaris, concluded that the law is closely tailored to advance an important state interest. That's in the Zabaris decision itself and cannot be challenged collaterally here. We know it because the U.S. Supreme Court has upheld these laws and indeed, as I mentioned, laws much more obtrusive than these in the form of consent laws over the past 30 years and that 44 states have laws like this on their books. And to boot, the U.S. Supreme Court, as we point out in our brief over a series of pages, has time and time again used the word reasonable in describing precisely this kind of law. So at the end of the day, even if the court were to conclude that the word privacy houses an abortion right, that abortion right is more protective than the federal right, nevertheless, it's their facial challenge as opposed to a future-as-applied challenge, their facial challenge fails as a matter of law. I'll turn briefly to due process and equal protection as well. The due process clause is worded substantively identically to its federal counterpart. One is in the passive voice, one is in the active voice, but both are virtually identical. And therefore, the presumption, as this court made clear in the analysis it laid out in Cabalas and before that in Tisler, the way you go about approaching this sort of provision is you begin from the presumption that it is in lockstep with its federal counterpart. And indeed, Cabalas explains how much is needed to overcome that presumption when it describes this court's prior decision in Washington. That was a case where the court did decide to depart from lockstep. And Cabalas explains the extraordinary elements that were present in that case that allowed the court to do so. None of those are present here. In Washington, as the court will recall, that involved whether or not actual innocence is a freestanding due process claim. The Supreme Court just a couple of years earlier in Herrera, the U.S. Supreme Court, had decided that it's not. And this court in Washington broke from lockstep on that point. But it did so only because three things were present, none of which exist here. The first, the Supreme Court's Herrera decision was deeply divided, and the court noted that. Contrast that to the U.S. Supreme Court in 2006 in Ayotte unanimously saying that states unquestionably have the right to require parental involvement. Second, in Washington, they had no evidence whatsoever about the framers' intent from the convention history. It was a blank slate. Here, as I've mentioned, quite to the contrary. And finally there, the court held that not considering actual innocence as an independent due process violation would shock the conscience. Again, contrast it to here, where nearly every state in the country has a law like this in place, and every member of the U.S. Supreme Court believes it's constitutional. So without a lockstep exception on due process, for the reasons I stated at the outset of the argument, the claim fails as a matter of law. It's even easier than that, as we point out, because, in fact, it's collaterally estopped. They raised a due process challenge in the Zabara's litigation. That claim was defeated by the Seventh Circuit, and that is therefore filed for collateral estoppel purposes. And there's been no contention here that the parties are not in privity from that case to this one. But even if the court disagreed on collateral estoppel, stare decisis does exactly the same work, because the U.S. Supreme Court has said this time and time again, and unless plaintiffs can convince the court that we're out of lockstep, notwithstanding cabalas and the exception that proves the rule in Washington, then the claim fails at the outset. Equal protection. Well, here there's no dispute that equal protection, we are in lockstep. This court has said so expressly on multiple occasions, most recently last year in In re. Jonathan C.B. The court made clear that we are in lockstep with the federal constitution on equal protection. And what that means is that plaintiffs must convince this court, in order to rule in their favor, as I said earlier, that if the U.S. Supreme Court were today presented with their complaint raising an equal protection claim, that court would undo 30 years of its jurisprudence, overturn the laws of 44 states, and go back on what it said unanimously in A.I. in 2006. That's what they need to show in order to prevail on equal protection, because they're in lockstep. Now, plaintiffs make the point that the U.S. Supreme Court has never squarely addressed an equal protection challenge to a notice or consent law. That is true to a point, but the U.S. Supreme Court has made pronouncements that squarely foreclose any argument that that court would today adopt their equal protection theory. In Matheson, which was decided in 1981, it's a notice case, and it has been cited many times since by the court. In the course of dismissing or doing away with the substantive due process theory that was raised, the court addressed what amounts to an equal protection claim on all fours with the claim that plaintiffs advance here. With leave of court, I will just read very briefly a short sentence from the court. In that case, the plaintiffs claimed that Utah allows a pregnant minor to consent to other medical procedures without formal notice to her parents if she carries the child to term. That was the basis for part of the substantive due process argument, precisely the argument that's being raised here in the guise of an equal protection claim. The court responded, but a state's interest in full-term pregnancies are sufficiently different to justify the line drawn by the statutes. So while it was, to be sure, formally in the guise of a substantive due process claim, the court was very clear that it would reject this equal protection theory. More than that, every federal appellate court to address the issue since then, all three that we cite in our briefs, all understand the Supreme Court to have closed the door on equal protection challenges to notice and consent laws. So this court would not only have to say that the U.S. Supreme Court didn't mean what it said in Matheson, but also that every federal appellate court to have interpreted the Supreme Court decisions have also gotten it wrong. And finally, I'll end with rational basis. If at the end of the day the court were to conclude that as to this issue, we are out of lockstep on equal protection with regard to the abortion question, if that's the conclusion the court reached, rational basis would be the approach. There is a suggestion in the plaintiff's briefs that strict scrutiny would apply because there's a fundamental right at stake. This is not the fundamental right that the U.S. Supreme Court has recognized. Indeed, the U.S. Supreme Court has rejected time and again the theory that there is a fundamental right triggering strict scrutiny for abortion. Rather, what the Supreme Court has made clear is that there is a right not to be unduly burdened in the abortion decision. And the court has gone on to say in Volati in 1979 and in all of the consent and notice cases since, that so long as the statute includes a bypass procedure like the one here, it isn't an undue burden. Therefore, there can be no question but that rational basis applies. And were there any doubt, I would again commend to the court, we have them in our briefs, the Supreme Court's decision in Maher in 77 and Harris in 1980. Both equal protection challenges involving abortion, not notice and consent, those were funding laws, and they were funding laws that discriminated expressly or very obviously against abortion. The court rejected the theory that strict scrutiny applied, applied rational basis, and upheld both laws. So again, there can be no claim here that even if the court were for the first time to break from lockstep on equal protection, that anything other than rational basis applies. And as we explain in our brief, this law as a facial challenge certainly easily satisfies the rational basis standard. In my remaining moments, I'll just touch upon gender equality. As our briefs make clear, as this court has made clear, that provision was included in the Constitution in order to ensure that women like other groups were, discrimination against women or other, you know, on the basis of gender was subject to strict scrutiny. All of this court's cases have applied that provision only where there has been discrimination between genders. And as we explain in our brief, they haven't done so here. As we further explain, the cases they cite involving federal Title VII law, which is an opposite in any event, they themselves do not disprove this idea that there has to be gender-based discrimination. And there is none alleged here. Unless the court has any further questions. Thank you, Mr. Schroeder. Thank you. May it please the court. Sorry. May it please the court. My name is Lori Chaitin. I'm here on behalf of the Plaintiffs' Appeals. Under Illinois law, the only medical decision a pregnant minor faces that requires parental or court involvement is the decision to have an abortion. And the only interest the state asserts in singling out abortion in this way is to protect minors. The complaint provides well-planned allegations that, when proved, will show that the assumptions underlying the General Assembly's belief that minors seeking abortion are in need of special regulation are false and that the Act actually puts minors in harm's way. Such proof establishes significant constitutional wrongs under the Illinois Constitution. And plaintiff's allegations are based on an overwhelming body of scientific study and the prevailing consensus among the leading medical, psychological, and public health authorities in the country. And yet defendants would have this court disregard these allegations and dispose of plaintiff's Illinois constitutional claims on the pleading because federal courts that did not consider this evidence have upheld similar laws under the U.S. Constitution. That result is wrong under any appropriate understanding of this court's power to interpret and enforce the Illinois Constitution. The plaintiffs have stated a classic equal protection case. Illinois treats similarly situated people, all pregnant minors, differently based on how they exercise their fundamental right to abortion. The state imposes harmful restrictions on those who seek abortion, but it does not impose on those who choose to carry their pregnancies to term, and it does so without justification. Since the Act implicates a fundamental right, strict scrutiny is indeed the appropriate standard, and that imposes on the defendant a heavy burden to justify the discriminatory classification, and this is a burden that defendants cannot meet on a motion to dismiss. While the state's asserted interest in protecting minors is no doubt compelling, in the face of plaintiff's allegations, defendants cannot meet their burden of demonstrating that the classification here is narrowly tailored to advance the interest or is the least restrictive means of doing so. In passing this Act, the legislature assumed that abortion imposes serious and long-lasting medical and psychological harms, and that minors are incapable of making fully informed medical decisions. But these assumptions have been discredited by decades of scientific research and the broad consensus of the leading authorities upon which plaintiffs face their allegations. Plaintiff's allegations show that abortion is far safer from a physical perspective than carrying a pregnancy to term. Indeed, it is one of the safest procedures in contemporary medicine, safer than having an injection of penicillin. Plaintiff's allegations also show that minors who have abortions are as healthy, if not healthier, from a psychological perspective, than those who give birth. And the allegations show that minors considering abortion are as capable as adults of making an informed decision and certainly as capable as minors who choose to carry their pregnancies to term. The state simply cannot reconcile the classification here where it permits pregnant minors to make all other and far weightier decisions without being forced to involve a parent or the court. In short, the act frustrates rather than advances the state's asserted purpose of protecting minors by imposing significant harm without justification. And while the appropriate standard is strict scrutiny, we submit that under these allegations, this law could not even pass rational basis. The plaintiffs are not asking the court to strike the law in its entirety at this time. We're simply seeking the opportunity to return to the circuit court to present our evidence and to require the state to justify this differential treatment. Now the state argues, Mr. Scoggio just argued, that there's no fundamental right to abortion that is implicated here. But that's not even an accurate statement of federal law. The case Planned Parenthood v. Casey that set forth the undue burden standard was very clear. Undue burden is the test for whether, under federal law, is for whether a law infringing on the right to abortion is constitutional. It is not some sort of threshold requirement that a party has to meet before the court determines that there's a fundamental right at issue. And Casey was also clear that that court was reaffirming the central holdings, the central underpinnings of Roe v. Wade, which did in fact hold that there's a fundamental right to abortion. Mr. Scoggio's cases, Mayer v. Roe and Harris v. McCrae, which are the funding cases, never called this into question at all. And instead simply held that there's no fundamental right to have the state pay for your abortion. But the court was clear that where the state places obstacles in the path to abortion, that does implicate a fundamental right and it does therefore have to be considered strictly. Mr. Scoggio argues that rational basis is the appropriate standard here, and we disagree with that approach. But even if it were, as this court has made clear, there's a judicial obligation to ensure that the power to classify has not been exercised arbitrarily. And this court has repeatedly struck laws where, one, the statute, the classification undermines rather than advances the asserted purpose, and that would be, and they're cited in our briefs, but in Jacobson v. Department of Public Aid and in Best v. Taylor Machinery, the court has struck laws on a rational basis analysis where the same interest in classifying the two classifications differently can be asserted with regard to both classifications and that therefore there's no basis to differentiate. And the court has said that even under rational basis review, the legislature cannot classify based on unfounded assumptions. Yes, it can engage in rational speculation, but rational speculation is simply not the same thing as relying on specious and discredited facts. And in the case where the court had done that, where the legislature had classified marijuana as a narcotic and it had done so on the assumption that marijuana was a gateway drug to heroin use, the court said that was once believed, but current science, and it reviewed the current science, discredits that assumption and therefore the statute has to fall. Now getting to the lockstep doctrine, Mr. Schroeder argues that the only way that the plaintiffs can prevail on an equal protection claim is to demonstrate that the U.S. Supreme Court today would rule differently than it did in its due process cases on an equal protection claim if it were presented. But the reality is that the U.S. Supreme Court never has evaluated a parental notice or a parental consent law under an equal protection framework. But even if it had, the U.S. Supreme Court's cases are not outcome determinative. This is a separate court with a separate constitution, and it has the ability to evaluate the case that gets presented before them. So even though we are typically in lockstep on equal protection, what that means is that we apply the same standards. And under federal law and under Illinois law, the standard that gets applied when there is an infringement on a fundamental right is strict scrutiny. And as I have stated, the defendant simply cannot meet that burden, certainly not on a motion to dismiss. The U.S. Supreme Court's due process cases, which defendants rely on, are in fact actually unpersuasive even if this court wanted to look to them. Because those cases set up this framework for assuming that if you have parental notice or parental consent and a bypass process, that that would be constitutional. And it did so on the assumption in the Matheson case, in fact, that Mr. Skodro quoted, on the assumption that abortion is harmful, that abortion causes significant harm, that carrying a pregnancy to term does not, and that therefore there's an appropriate basis to differentiate. Indeed, Matheson stated without a single citation, without any support, that childbearing carries with it, quote, few, perhaps none, of the potentially grave emotional and psychological consequences of the decision to abort. Your Honors, three decades of scientific research has been conducted and published since that assumption was made. And that is the same assumption that the Illinois General Assembly relied on in passing this law here. And in that, in those three decades, that assumption has been demonstrated to be simply false. And when those assumptions fall away, any justification for that statute fails to survive. And I'd like to point out that even if, as Mr. Skodro suggests in the due process context, that we're in a stare decisis framework, which we're not. Lockstep is not stare decisis. Lockstep is a doctrine of constitutional interpretation, as this Court is well aware. But in a stare decisis framework, there is ample room for courts to consider new evidence and change circumstances. If that were not the case, then Brown v. Board of Education certainly wouldn't have come out the way that it did. Are you asking this Court to sit as some type of super legislature and determine the merits of the new studies that you've presented vis-a-vis the rationale of the cases that have been cited? No, Your Honor, not at all. What we're asking this Court to do, we are not asking this Court to strike this law at this time. We are simply asking to be returned to the circuit court. We want remand so that we can go to the circuit court. We can put on our evidence. The defendants can put on evidence. The circuit court can appropriately evaluate expert testimony and determine whether the infringement on this fundamental right can be justified. This case was cut off prematurely in the circuit court by the circuit court's mistaken belief that somehow the limited lockstep doctrine is a doctrine of preclusion rather than one of constitutional interpretation. And so we never had the opportunity to put on this evidence. We have very detailed allegations which, when proved, will demonstrate that the underlying assumptions that the Illinois General Assembly engaged in in passing the statute and creating these discriminatory classifications and this differential treatment will fall away. And it simply, in the face of that proof, the law simply won't be able to withstand any level of constitutional scrutiny. But we are not asking the Court to make that determination at this point. We don't believe that the case has been developed appropriately for that to happen. Has that evidence been presented to the legislature? The legislature did not consider evidence when it passed the law in 1995. It did not in its hearings. There were many, many statements made, but there was no evidence submitted to the legislature. So it was basing its decision to pass the law on these assumptions. And granted, these are the assumptions that the Supreme Court made as well, but they have been demonstrated to be false. And when they fall away in the face of over a quarter of a century of unbelievably developed scientific research and the prevailing opinion of the leading authorities in the country, the statute can't stand. We have also alleged a claim under the Illinois Constitution's unique privacy provision. As this Court held in Family Life League, and in a minute I'll explain why this is in fact a holding. Held in Family Life League, the privacy clause of the Illinois Constitution protects a fundamental right to abortion. And we don't believe that this is a typo. We don't believe that this was an error on the part of this Court in citing to the wrong provision and that they should have been citing to the due process provision. It is unimaginable that both the Illinois Attorney General, who argued this claim to the Supreme Court, and this Court somehow accidentally cited the wrong provision of the Constitution. Counsel, a minute ago you cited a case and indicated that it was completely devoid of analysis. So are you asserting that the Court in Family Life would have decided such an important question on the merits without any discussion of the text, purpose, history, or legislative intent involved in the drafting of that clause? Your Honor, first I want to be clear that when I was talking about Mathison, I wasn't saying it was devoid of analysis. What I said was that its analysis was based on assumptions that are false. And it had no citation to support those assumptions. And we now have 30 years of science that undercuts that assumption. But to answer the question about Family Life League, Your Honor, at the time that the privacy provision was added to the Illinois Constitution, the drafters were very clear that they intended to add broad protections against an undefined array of privacy invasions beyond those protections that were currently protected under the U.S. and the Illinois Constitution and that would evolve over time and be recognized through judicial interpretation. Privacy is a word that has common meaning, and it had common meaning at that time. And even this Court's definition of fundamental rights integrates that meaning. Privacy includes the most intimate aspects of a person's life. And this Court had no trouble concluding in Family Life League that that's what privacy meant. And it concluded that based on the arguments that were presented by the Illinois Attorney General. It is true. Since you don't have a chance to get back up, I want you to have the opportunity to answer this question, which really relates to one of Mr. Skodro's arguments. When we look to the time of the Illinois Constitution, abortion was illegal. When we look to the legislative comments, and in particular, Committee Chairman Gertz, and this is what Mr. Skodro said, I'm not saying it, so I just want you to address it, that he indicated that the clause had nothing to do with abortion. Your Honor, at the time of the Constitutional Convention, in fact, the question of the legality of abortion in Illinois was under question. There was a case called Dover v. Scott, which is cited in our brief, where there was a challenge being brought to the Illinois criminal abortion law, consistent with challenges that were actually being brought all over the country, and calling into question the validity of criminalizing this important and essential kind of health care. And as to the point about Delegate Gertz's comment, yes, it's true, he said what Mr. Skodro said he said, but in the context of all of the debates and all of the discussions at the Constitutional Convention, it seems clear that what the delegates wanted was an evolving and a living Constitution that could evolve with a changing society and be interpreted by the courts to reflect the needs. Mr. Gertz also stated that all kinds of things might invade our dignity as human beings, and I want to stem the tide. And the notion that all they were doing, by adding this word privacy, that actually had a common meaning that would include sexual and reproductive conduct, by adding this word privacy all they were doing was expanding search and seizure rights, it seems contrary to actually common sense in that all they had to do to expand search and seizure rights was to interpret search and seizure more broadly. But instead what they did was they added this term that had important meaning, and this court ruled in 1980. It's of no import at all that at the Constitutional Convention the chairman indicates that it had nothing to do with the right to abortion, and that went completely unrebutted. That's of no import. Your Honor, I am not saying that it is of no import, but what I'm saying is that the understanding was that they were trying to allow for a future interpretation of the Constitution, which happened in 1986 with this court's decision in Family Life League. Your Honor, I want to move on to the question of whether that was a holding. It was a central issue that had to be resolved in the case once the Illinois Attorney General raised the argument that in fact the fundamental right to abortion would be invaded were the state required to produce a list of the names of abortion providers because it would infringe on the rights of their patients. And so once that was raised, the court had to resolve it. It didn't have to go further because it concluded that there wasn't evidentiary support for it, but as Justice Garcia stated below, once it located the right to abortion in the Privacy Clause, at that point this is an independent and express right in the Illinois Constitution that doesn't exist in the federal Constitution, and once it's located in the Privacy Clause, what this court does is it engages in the reasonableness analysis, the analysis of whether there's been an unreasonable invasion of privacy under the Illinois Constitution, not under some other reasonableness analysis. And what this court does is it weighs the level of expectation of privacy and the degree of intrusion into the need for the intrusion. And here these allegations, taken as true as they must be in this procedural posture, demonstrate that on this side of the equation, on the need for intrusion, there is absolutely nothing. There is no need for intrusion on the fundamental right to abortion or on the right of the young woman not to have to reveal the most private, most intimate aspects of her personal life, either to her parents or to a court. And I want to move on now to Mr. Scourger's argument about facial invalidity. Mr. Scourger keeps saying that this is a facial challenge and that, therefore, the plaintiff has to be able to demonstrate that the law is unconstitutional in all of its application. As the U.S. Supreme Court has recently stated in Citizens United, the difference between facial and as applied isn't a question of the adequacy of pleadings. It's a question of the breadth and the scope of the appropriate remedy. Courts don't dismiss cases on the pleading stage because they think that a plaintiff can't prove a certain kind of relief. And we've asked for all relief just and proper here. Courts, instead, faced with established constitutional wrongs, look for ways to right those wrongs. In AYOT, actually, the case that Mr. Scourger cited is quite instructive on this point because in the AYOT case, and by the way, in AYOT, the court did not consider the differential treatment of pregnant minors who carried a term from those who have abortion. It simply relied on the longstanding history in the U.S. Supreme Court of upholding these statutes. But in AYOT, the Court of Appeals had struck the statute in all of its applications. And what the U.S. Supreme Court said is, we think this is unconstitutional in some, but not all, of its applications. And while it might be necessary to strike it completely in its entirety, we're going to remand it to the Court of Appeals and let the Court of Appeals consider whether there is a narrower form of relief that could right those constitutional wrongs without the need to invalidate it in all of its applications. Now, I can see that my time is up. If I could just briefly summarize. I have one question for you. Sure. As Chief Justice Kilbright said yesterday, you have to adhere to the light we don't. Okay. Fine with me. I have all day. Assuming, arguably, if the court recognized the right to abortion and family life, which is your position, right? Yes. Wouldn't it merely be coextensive with the federal right? Because the court uses the phrase in that case, that right of privacy guaranteed by the United States Constitution is also secured by the 1970 Constitution. So would it be merely coextensive with the federal right? Your Honor, that refers back to the woman's right, the woman's decision whether to terminate her pregnancy. That right is what the court, what I believe that the court was referring to. And it wouldn't be coextensive because, again, we have an independent privacy clause. We have one that doesn't exist in the federal constitution. It is not interpreted in lockstep with federal doctrine. Under Caballé, that would not be appropriate, even in Caballé. After the court evaluated the search and seizure claim, the Fourth Amendment claim in lockstep, it then turned to look at a completely separate privacy claim. But if it were not in lockstep there, and, again, as Justice Garcia noted below, once the right is located at the privacy clause, then it's a question of looking at this court's precedent. How does this court read its own constitution? And we submit that for the reasons stated in our brief, that we have adequately alleged claims for equal protection, privacy, due process, and gender equality. We ask the court to return the case to the circuit court, let us fully develop the record, and then have an appropriate level of review. Thank you. Thank you. Rebuttal, Mr. Scodro. If any. Very briefly, Your Honor. I want to make a clarification at the outset regarding Casey and the fundamental right. There's been some back and forth on this, and I want to make sure there's no misunderstanding. It is not the defendant's position that you have to first show a violation, an undue burden, and then from there proceed on to additional review. The point merely is that the U.S. Supreme Court has made clear time and time again that the fundamental right is not the right to an abortion per se. It's a right, the right that's protected, and vigorously protected, is the right not to have the state unduly burden that decision. Indeed, as Casey itself said, it's not a right to decide whether to have an abortion without interference from the state. Rather, it's a right not to be unduly burdened. Likewise, in the Maher case, which, as I mentioned, was an equal protection case that involved funding, the court said the right protects the woman from unduly burdensome interference with their freedom to decide whether to terminate her pregnancy. So while we agree that what the federal court has identified as the level of scrutiny or as the right is an undue burden right, the Supreme Court has also said, beginning with Bilotti in 1979 and right through today, has said if there is a judicial bypass and other elements that are absolutely in place here exist, then a notice law or a consent law does not provide an undue burden. And our point is merely that unless this court recognizes one, under the due process clause of the Illinois Constitution, out of lockstep with federal law, unless this court for the first time announces a fundamental right to abortion per se that goes beyond what the federal courts have consistently held, then strict scrutiny simply doesn't apply. Rather, as the Supreme Court has said, in cases where there isn't an undue burden, they're applying rational basis as they did in Maher, as they did in Harris. If we accept Pope's argument that this court meant what it said and the Attorney General meant what it said in citing to Article I, Section 6, would it be necessary for us to overturn family life in order to uphold the law in question here? No, Your Honor. Would you have to overturn Family Life League in order to – I'm sorry, if you could repeat the end of your question. In order to agree that the statute here passes constitutional muster. I see. No, Your Honor, you would not. As we make clear, first of all, for multiple reasons. And let me take the easiest of them first. And it's a point Justice Thomas touched upon in his question to opposing counsel. Life League makes clear that it is referring to the privacy right that was recognized in Roe. It is referring to the privacy right that was recognized in Akron Center, which is also the other federal case cited by the Supreme Court in Family Life League. There's no independent analysis of what privacy means beyond lockstep. So even if this court were to conclude that Family Life League announced a right to an abortion and it's housed in the privacy clause, it would not affect our position before this court at all. Indeed, defendants have made clear throughout. Defendants, because we see the due process clause as in lockstep, defendants are of the view that the Illinois Constitution does recognize a right to an abortion that is in lockstep with those federal protections. And for the same reasons that the due process claim fails, namely the fact that the U.S. Supreme Court has rejected claims like this for the last 30 years, for that same reason, even if Family Life League were read to announce that right and housed in the privacy clause, it would not affect the outcome in this case. There was also a question regarding what rational basis means and the idea of courts as super legislatures. As this court made clear in Coutinello in 1994, rational basis is not, in the court's word, subject to courtroom fact-finding. But that's precisely what's being asked for here, is that we go back to the circuit court and have that court serve as the super legislature and to take in courtroom fact-finding. Now, plaintiffs contend that the facts have changed, but I would direct the court to our brief at pages 33 of our opening brief and pages 8 and 17 of our reply brief. And at those portions of the briefs, we quote from and identify or pincite to a series of U.S. Supreme Court cases where largely dissents in those cases summarize the evidence that was presented and that evidence tracks very closely the nature of the evidence that's being presented here. And again, at the end of the day, the point would have to be that in view of these changes or in view of the way the issue is framed here, federal courts, if we're in lockstep, federal courts would also agree that there is an equal protection violation. Let me make one note about the legislative history. There's been discussion about the outdated nature of assumptions and so on, but I would at least direct the court's attention to at C943 in the record, the House sponsor talks about reasons behind the law as it's being proposed. And he mentions the fact, and this picks up on a theme that appears on behalf of some of the U.S. Supreme Court justices in their opinions as well in their decisions. He identifies the need for medical history to be passed along, that unlike with childbirth, where at least it would not be irrational on the part of the General Assembly to assume parents would be more often aware of the childbirth as it's occurring or beforehand, with the case of an abortion, notice allows the parents to provide the physician with family medical history, with the history of the juvenile's own medical records. That's something that certainly was talked about on the floor when the bill was being discussed. Turning briefly, there was a mention of the fact that Chairman Girtz is but one member of the Constitutional Convention, and while of course that's true, the case the plaintiffs cite in their briefs for that proposition is the client follow-up company case from 1979. And in that opinion, this court does say that you can find different things sometimes in the Convention history, but I would mention to the court what this court did in that case on page 226 of the court's opinion in that case. What does it ultimately rely on? It relies on statements made by the chairman of the relevant committee. In that case, it was Chairman Carnes, chairman of the Revenue and Finance Committee. It was a revenue and finance issue that was before the court involving ad valorem taxes. And the court did say that you can lose your way looking at what different people on the convention floor say, but they did put stock in what the relevant committee chairman said, and here that's Chairman Elmer Girtz. And finally, with regard to the facial challenge, and I'll end with this, as we point out in our brief, this court does not merely give lip service historically to the statement that in making a facial challenge, you have to show that a law is unconstitutional in all of its applications. And indeed, this court has adhered to that consistently in the cases we have cited, and this is not an issue of remedy. Plaintiffs have yet to suggest what that remedy would be on remand. As they say, this is really just about getting in the door, and then after showing some problem, constitutional deficiency, it will be up to the circuit court to craft a narrowly tailored remedy. I'm hard-pressed to figure out what that could be, and nor have they yet suggested what that could look like. The request here is that the bypass is fundamentally unsound, that is the plaintiff's theory, that it is unconstitutional and that it ought to be struck down in toto. And so I'm not clear as to how this could be reconciled, and the court could say, well, it's okay, we'll look past our repeated statements about the facial challenge standard, and instead we'll make that a remedial issue, unless the court has further questions. Thank you. Thank you, Your Honor. Hope Clinic for Women, LTD, et al., Appleese v. Brett Adams, et al., appellants, and Stuart Umholtz, et al., appellant intervenor movements are all taken under advisement as agenda number 24. And this concludes our oral argument docket for September 2012. Mr. Marshall, the Illinois Supreme Court, stands in adjournment.